We are going to move now to Case No. 2. This is Appeal 21-2683, Janay Garrick v. Moody Bible Institute. We're going to begin with oral argument on behalf of the appellant, Mr. Bloomberg. Thank you, Judge Brennan. May it please the Court. Daniel Blomberg for Appellant, Moody Bible Institute. I reserve four minutes for rebuttal. This Court has jurisdiction under McCarthy because this case threatens irreparable harm to the First Amendment's Church Autonomy Doctrine. That doctrine protects against not just liability, but also the very process of judicial inquiry into religious disputes like this one. Before you go too far down, I just want to clarify. For the Collateral Review Doctrine, you are not relying on the Ministerial Exception, are you? That's correct, Your Honor. This is a Church Autonomy Doctrine case. The Ministerial Exception is a part of that doctrine, but it's not the one before it. And you cite some cases for the Ministerial Exception, but I did not understand you to be using that as the basis. That's correct, Your Honor. That's right. And as you see in this Court's Dimkovich decision, the Church Autonomy Doctrine is the basis from which the Ministerial Exception flows, and so there's a lot of transferable principles, including ones that this Court has addressed that are relevant to this Court's analysis here. The plaintiff's contrary views on the Collateral Order Doctrine, the protection of the right against not just liability but also the harm from trial, is inconsistent with the Supreme Court's precedent, this Court's precedent, numerous other courts, and leading scholars. Mr. Warmberg, are there any factual disputes relevant to this appeal? No, Your Honor. So you accept basically the most plaintiff-friendly account of the complaint? That is consistent with the pleadings, Your Honor. That's correct. And where there are inconsistencies, she gets the benefit of that, right? Not, Your Honor, where the documents attached to the pleadings belie a statement in the pleading. Well, there are sometimes inconsistencies in either side's version. She says there are inconsistencies in your side's version, so don't we have to give her the benefit of all that then in this appeal, the way we would in a qualified immunity appeal? Your Honor, correct to the extent that the attachments to her pleadings, which are part of the pleadings for all purposes, don't belie the statement in the pleading. So, for instance, I think that the key issue here is whether this case is really quite simple under and is essentially exactly the same case that Judge Lee decided in the first instance of the First Amendment complaint, and that is that there was, that Ms. Garrick admitted that Moody had a religious motivation for his actions. She said that under penalty of perjury in her appeal. And people are not allowed to plead in the alternative in federal court? You're not allowed to plead inconsistently, Your Honor. You can plead in the alternative, but you can't plead inconsistently, and this court has said that in a variety of contexts, including with EEOC charges. So you don't want to give her the benefit of some of the things in her complaint? The only issue. Okay. Let's, on the, as I understand the jurisdictional problem that you've presented to us here, the issue is not really whether the church autonomy defense should be, a denial should be appealable, but the question is whether the courts should recognize that new category of collateral orders through the process of case-by-case adjudication rather than through the Rules Enabling Act. I was surprised not to see, maybe I missed it, but I didn't see it in your table of authorities, anything in either of your briefs addressing Swint, Mohawk Industries, or the Rules Enabling Act. That's right, Your Honor, because this court already addressed the relevant category here in the McCarthy decision, where McCarthy said that church autonomy defenses are immediately appealable under the collateral order doctrine because… And so Hertz was just mistaken? No, Your Honor. Hertz was an application of McCarthy. So now Hertz says expressly that McCarthy establishes a rule that fundamental threats to religious liberty can be appealed on an interlocutory basis where there is showing of irreparable harm, but in that case there was no such showing. And Judge Sykes was very clear about what she was saying there, that there was no such showing in that case, and she cabins her decision… How is that any different from – how is the situation in Hertz different from this case? Well, because… Other than the quality of the briefing, which you've criticized. Well, I think the quality of the briefing is very important, Your Honor, because Judge Sykes emphasizes over and over that the diocese – they only held the diocese to fail to make a persuasive case for interlocutory appeal here. And so they – I mean, the key decision in front of the – for this court, the key precedent is McCarthy case. McCarthy is cited twice in the briefing, once with a parenthetical cite and once in support of the statutory argument. There is no extended discussion of it in the diocese briefing, and so this court decided the case over before it. So you think Judge Sykes forgot about it? Not at all, Your Honor. And she – her opinion has more discussion of McCarthy than does – Exactly. Yeah. But what she says is the rule established by McCarthy is that interlocutory appeal is appropriate in a church autonomy case where there is a showing of likely irreparable harm. And here there is. And I think the two easiest ways to see that are, first, looking at the complaint itself. The decision here was – is incorrect because the second amended complaint is a church autonomy violation for the exact same reason the first amended complaint was. It sounds like you're trying to make this a kind of case-by-case examination of the facts related to the threat of irreparable harm. No, Your Honor, but it is relevant. It is relevant that the – How does that fit with the Supreme Court's insistence that we deal with the collateral order doctrine on a categorical basis? So the category has already been established by McCarthy. The question is whether this particular case fits within the category and doesn't have any issues with it. So qualified immunity cases, there are numerous examples of where some will take qualified immunity appeal. That's a good example of a very well-established category of interlocutory appeal. But there's a dispute of fact, and so that prevents the court from being able to accept that particular appeal. So that's the kind of showing that the appellant has the burden to show. They didn't show it in Herx. Judge Sykes expressly affirmed McCarthy. And, in fact, a couple years later in the McCarthy II decision, the court again addressed that issue. And so the key is showing that there is a likely threat to church autonomy in this case. Let's step back. Judge Park in his dissent in the Belia case says McCarthy and Herx are in tension. It's not clear. So they go to the three steps of collateral order doctrine, specifically the emphasis on the third step with regard to that. What is Moody's argument with regard to that third step? That's right, Your Honor, and that's the key in Herx too, the issue of unreviewability in the third step. And here the unreviewability problem is twofold. One, that this case before this court is exactly the same case that was dismissed at the first admitting complaint stage. It's a church autonomy violation because it's requiring this court to inquire into religious beliefs about the composition of the clergy. Second, the only issue before the court now, the issue that the district court identified below, is the question of whether pretext can be shown. Well, pretext, again, is barred by the EEOC charge. But it's also, in this particular case here, requires the kind of inquiry that this court in NLRB, in the Third Circuit in Curie-Kramer, said isn't permissible. How about Judge Easterbrook's commentary with regard to pretext in Strelinsky? Well, Strelinsky is an excellent example of the underlying point. So in Strelinsky, the court says, you know, you can't have a religious justification hooked up for the occasion. Whatever people might think of Moody's religious beliefs here, they certainly aren't hooked up for the occasion. By Ms. Garrick's own pleadings, the religious program that was at issue that led to the complaints and the advocacy on campus had been in place for over 100 years. They're on the website. They're a part of every contract that faculty have to sign. This is not a hooked up belief. And there's no dispute that Ms. Garrick was, in fact, in violation of the belief. And that brings us right into NLRB and right into Curie-Kramer where you have a situation where a court is going to have to ask a sincere religious belief that has clearly been violated and there's no dispute on either of those issues. How do we adjudicate pretext in that context? So how do you explain hiring Ms. Garrick in the first place? Well, because Ms. Garrick signed the employment contract that said that she… She says you guys knew I didn't think that. She did say that. She does say that. And we don't contest that. But her supervisor was clear ahead of time that she needed to amend her resume. If she wanted to be there, she couldn't hold herself out as an ordained minister because of their religious beliefs. And then when the issue came to it, she signed the contract, which expressly required affirmation of the beliefs at issue, which was their understanding, clear statement of her intention. And then once they became aware that Ms. Garrick was, in fact, advocating against their beliefs on campus, on the job, twice they approached her about it. Her female supervisor brought her into the office, handed her the doctrinal statement and said, how can you sign this? And then, again, her supervisor just a couple days later at a meeting that she requested said, how can you affirm this doctrinal statement? And so Moody's position on its religious beliefs has been very clear throughout. And, again, there's no dispute that it's our… Why wouldn't jury instructions address your concern? McCarthy's a little bit different because in McCarthy, the question was going to be put to the jury to decide something that the church had already decided whether or not the nun would be recognized, which is very different from where we are in this case after the motion to dismiss stage. Why couldn't jury instructions address your concerns and tell the jury they're not to assess the religious beliefs, they're not to pass value on them, that the question for them is whether or not those beliefs are a pretext or whether or not that is the basis for the firing here? So I think the best case on this, Your Honor, is Curie-Kramer. And so the Third Circuit walked through this very carefully, and they said, you can have some degree of assessment of the sincerity of the belief and the violation of the belief. That kind of thing is totally fine. That's not an issue here. And then the other thing you can do is you can ask whether there's a similarly situated employees that were essentially in the same situation. And so it's a very binary question. In Curie-Kramer, it was – well, in Herx, actually, it was a question of male employees, were they allowed to use IVF? Female employees were not allowed to use IVF. Very binary. Here we don't have that because here the issue is Ms. Garrick's rejection of Moody's religious beliefs. And she admits in her pleadings of paragraph 44 that she was the first to reject it in this way. So there's no way to create that kind of binary test and binary assessment. Why isn't that just an issue for summary judgment then? Because it's clear on the pleadings right now before this court. And so requiring Moody to continue to defend this case after five years and enter the Serbian bog of discovery. Well, that happens in other 12b-6 where courts may ignore what's in the pleadings or not construe it in the light most favorable, and then it goes on to summary judgment, and they ultimately win at summary judgment. So what we're talking – what I'm focusing on now is the jurisdiction to take this now as opposed to the merits of maybe something was missed in the pleadings. Yes, Your Honor, absolutely. And so the key there is understanding the nature of the right in question. Is this right a right that defends against the travails of trial or just against liability? If it's the travails of trial, then cases like Bryce and Petriska and others say this court should reach at the earliest opportunity. And so a great example of this is the Dinkovic case that this court decided just a couple of years ago, which was also an interlocutory appeal, which was decided at the motion-to-dismiss stage. It was, however, a 1292b. It was, Your Honor. And I think that's very important here because we also asked for 1292b certification, and we didn't get it. And it can't be the fundamental constitutional rights depend upon a discretionary certification. And that's what the plaintiff's argument is, that as a constitutional matter, an entity that has threatened irreparable harm to their fundamental constitutional rights can't get reviewed just because of 1292b certification denial. Mr. Plumberg, are there any aspects of the claims here, retaliation, discrimination, that are not tied up in this complementarianism versus egalitarian distinction between Ms. Garrick and Moody? No, Your Honor. And that's pretty clear from the pleadings, too, from paragraph 88 and A125 and paragraph 69, where Ms. Garrick alleges over and over again, states over and over again, that the issues arose after she began advocating against the beliefs on campus. I think the only one that I'm aware of that happened before then was her concern about being asked to remove from her resume that she was an ordained minister. I think that happened in 2014 as a part of her application process. But if you look at the factual narrative in the case and, again, at the EEOC charge, all the relevant conduct happened in 2016. In fact, 2016 is the deadline that the EEOC charge says where everything starts. And so everything in 2016, January 2016, is where Ms. Garrick helped the student file the Title IX complaint against Moody's beliefs. And then February 2016 is where she begins revealing that to other employees at Moody Bible. Mr. Plumberg, how would your arguments for immediate appealability here apply, let's say, in a defamation case where a defendant is invoking the defense of New York Times versus Sullivan? Or in an antitrust case where a party is invoking Norah Pennington? You've got First Amendment rights asserting a defense against liability, and it would be very easy to argue against the costs and burdens and intrusion of trial, either in the news media or in the antitrust setting. So I think it would depend on the nature of the asserted right. That's the core question when you're asking about the collateral order interlocutory appeal. And the other issue is that, frankly, many other First Amendment rights regularly get interlocutory appeal, either 1291 in the Collateral Order Doctrine or the Companion Statute of the State. Regularly? We don't see many of those. Fair enough, fair enough. And I have to tell you, I didn't see very many in 16 years at the district court either. Fair enough, fair enough. The word I would use is often. That's what this court used in 1987 when it addressed one of these First Amendment cases. It was a media case coming up, and we started it into our applied brief. And then I think the Fifth Circuit in the Marlowe case says regularly. So, you know, be that what it may. But those are First Amendment free speech cases and associational cases where interlocutory appeal is already permitted. The question here is whether the Church Autonomy Doctrine is going to receive similar respect. And the Fifth Circuit in the Whole Women's Health case said, yeah, we do have to do that. If we're going to allow other types of rights that are facing irreparable harm from the trial itself to have interlocutory appeal. But the Fifth Circuit case was different because that involved a non-party. That didn't involve a party. That's correct, Your Honor, but that actually makes it stronger here, stronger analog here, because it shows the Church Autonomy Doctrine applies even when we're talking about a non-liability issue. Liability was not at all a question in Whole Women's Health. And then also the Fifth Circuit in the Leonard case later said it's very different from our normal rule with a non-party case. In a normal non-party case, we don't allow interlocutory appeal. We'll sort it all out later. But the First Amendment interest, excuse me, the First Amendment interest in the Whole Women's Health case under the Church Autonomy Doctrine, the structural rights implicated there, required interlocutory appeal in that context. How would your arguments on appealability here apply, let's say, to a hospital chain that's ultimately run by a holy order and to claims by non-ministerial employees for various forms of discrimination? So it'll depend. The steps in a church autonomy analysis are always going to start off first. Is it a religious organization that's able to assert the particular type of claim here? Sometimes it's a very close question. So the Penn v. Methodist Hospital case in the Second Circuit was a closely divided decision. In that case, they did find that the hospital was a religious organization sufficient for purposes of its chaplaincy program to assert the ministerial exception, but it was a very close case. That's not going to be true in a lot of other cases. This is not that kind of case. I'm asking you to address that kind of case. Well, and that's what I'm saying, Your Honor, is that you don't have to, as a general matter, and when you do get further outside of the context of churches and religious educational institutions like Moody Bible Institute, which is wholly committed to developing religious leaders for the future, in that context… So we're going to have core religious institutions and marginal religious institutions? No, Your Honor, but the test… It seems to be what you're saying. I'm sorry, Your Honor. The test has been developed in most cases, so there's not a uniform rule across the circuits about this, but the Fourth Circuit, the Sixth Circuit, the Ninth Circuit, I believe the Seventh Circuit in Grewscot, though I'd have to go back and check because I hadn't looked at this particular issue, has said when a religious organization holds itself out as being a religious entity, having religious beliefs and guided by those religious principles and open and obvious and clear… All those hospital chains have statements of purpose to like that. And I think the question would be whether that is accurate for their institution, and the Penn case shows as it relates to the particular controversy at issue. So the Second Circuit didn't say this is the rule for everything that the hospital does. It does matter, though, for the chaplaincy program because that's a particular component that's closely related to any religious mission in the hospital. Okay, so that would take us into the ministerial employee discussion. But you're asserting this right regardless of whether somebody is a ministerial employee, correct? That's correct, Your Honor, just like Bryce and Kerry Kramer. Why is that? Why is the ministerial question not in front of us? Well, because that needs to be proven up through discovery, further discovery. Here the issue is because there's a religious justification that's not disputed, a violation of the religious justification not disputed, and the only type of pretext inquiry in front of us that can't look like the binary discovery or issue in Kerry Kramer or Herx, this case is barred just like Bryce was and just like Kerry Kramer was. If I can reserve the balance of my time. Okay. Thank you. Thank you, Mr. Blomberg. We'll now move to Mr. Girard on behalf of the appellee. Thank you. May it please the court. Bradley Girard for Appellee Jenea Garrick. Moody asked this court to ignore the Supreme Court's repeated admonitions and create two sweeping new categories of collateral order jurisdiction, one of which, Title VII, Moody forfeited. Even if this were a matter of first impression, that would be a tall order. But this court's binding precedent has already rejected both categories. So I'll start with Herx. Herx refused to find Cohen appellate jurisdiction when the district court denied summary judgment on the exact same defenses that Moody raises here, Title VII's religious exemption and the church autonomy doctrine. Every reason that Moody gives to find appellate jurisdiction here was squarely rejected in Herx. It is not an immunity from trial. And the opinion in Herx says, quote, to our knowledge, there is no authority that the church autonomy doctrine is an immunity. And that's correct. Herx also said that not allowing an appeal will not cause any irreparable harm, unquote, will not be irreparably harmed by enforcement of the final judgment rule. Now, the rule that Moody gives is just not what Herx held. Herx did not say that any time there is a, quote, likely irreparable harm, this court can have appellate jurisdiction. And to put a practical point on it, just think about what that would mean. Under Cohen, the court creates categories, full categories of appellate jurisdiction. And if the category were any time that somebody alleged there was some likely irreparable harm from going forward, what that would mean is there's an immediate right to appeal, that this court then gets full briefing, has to go through everything in the district court, has to sift the facts, has to draw all of the inferences, and then decide only after all of that if there's appellate jurisdiction. Mr. Girard, we have one party telling us Herx controls. We have another party telling us that McCarthy controls. We've got other very bright judges saying these opinions are in tension. So we go to the collateral order doctrine, the various criteria. Can you address the third criterion? And specifically, isn't this a different case if Judge Lee had not made the decision on the first amended complaint? If, for example, pretext had been introduced in the original complaint, it's a different world than what we have here with the second amended complaint, isn't it? Well, Your Honor, there's a few things going on there I'd like to address. First, and I think this is something that's really important when we're talking about Cohen, again, we're talking about categories. And so you can't draw a category by saying, well, in the first amended, in the first complaint, maybe she didn't say pretext as clearly as she could have. Now, we think she did, and we think that any reasonable reading of either complaint alleges pretext fairly. But, again, going just back to the issue of whether this is a category of appeals where, again, it's an appeal as of right. So there would be no ability to draw that line cleanly. And that is why 1292B and writs of mandamus exist. If something is that clearly wrong, if a district court really just totally misses it, then there's a writ of mandamus, an individual case, and you can get an immediate appeal. And so to go to – Do you think that's the better understanding of McCarthy? I think that's the – it's not what McCarthy said. I think what Herck said was, look, we limit McCarthy to this specific instance. I actually don't think there's any tension. The judge in McCarthy is about to ask a jury to overrule the pope, right? Right. On a question of religious status. Right. That's pretty far outside anybody's notion of an appropriate question for a jury. Right. And I think McCarthy is best understood, really, as an issue of the competency of courts and asking a jury to decide an explicitly religious question, especially one that the Holy See had already answered for the court. Isn't this of a piece, though, of church autonomy doctrine? When you say these, when you make that argument to us, that sounds like church autonomy. Well, I think it is a piece of church autonomy doctrine, but I'm happy you raised that because it does help to understand what the right is, what church autonomy means. And there's nothing in McCarthy that supports the idea that it is an immunity from suit. Actually, what McCarthy said was, look, when there's a religious question, courts can't answer it. We have to accept the religious answer to that question, and then you go on with litigation. McCarthy didn't disagree. This goes to my question to Mr. Blomberg, then. What is there in the Title VII retaliation of discriminatory context in the Second Amendment complaint that's separable from this concept of egalitarian Christianity versus complementarian Christianity? Well, I'm happy you raised that because Moody's brief just ignores all of the allegations that can be totally separate. And I can go through some of them. I'd say I'd point the court just generally to A96 to 97 in the appendix, but Garrick was subject to peer reviews where her male faculty were not. She gave a joint presentation with a male colleague. She was chastised after the fact he was not. She was denied a reducing teaching load while finishing a degree. Her male colleagues were not. She was required to create from scratch five entirely new courses. Her male colleagues were not. And if this was her original complaint, I'm seeing more what you're saying. The problem is her original complaint grounds all this in the different views of Christianity that she had versus Moody did. And then Judge Lee makes this decision. No, church autonomy applies. It gets sanitized of a variety of these different religious words. Then the Second Amendment complaint comes out. I think, you know, egalitarian is still mentioned five times. Complementarian is still mentioned a couple times. Ms. Garrick mentions her beliefs in that second complaint. So it's hard for us to see how the second complaint, if its basis is this religious difference, wouldn't implicate this category of church autonomy. Well, again, not to beat a dead horse here, but we're talking about categories for Cohen, right? So once again, I'm not sure how you would draw a line to say, okay, well, when we read both complaints. So imagine there's a case where there's three complaints and it comes up and there's a question of jurisdiction. To find jurisdiction under Cohen, under some kind of line where you would have to, again, have this court sift through all of these allegations. And, you know, that's the sort of breathing down the necks of the district court that Cohen is really intended to avoid, among other jurisprudential concerns, of course. But I also just think that's not looking at the allegations in the complaint in a favor, in a light favorable to Garrick. Garrick is a pro se litigant. She wasn't for the first complaint, though, was she? She was for the first complaint, not the EEOC charge. She was a pro se on the first complaint? The first amended complaint, she was. She was pro se. Yes. Okay. And so, you know, she experiences all of this discrimination, this horrible work environment, and she's getting all sorts of conflicting reasons as to why. She gets a negative performance review that doesn't say anything about doctrinal disputes. It doesn't say anything about a year earlier that she had helped some students with a Title IX complaint. It just says, oh, you're not a really good fit. And, you know, two months earlier, actually, her supervisors, the same people who delivered this negative review, had said, you're great. You're doing a great job. We're happy to have you here. You've done two years of excellent service. We actually want you to create a new course. She says all of these things. She's hearing this from her employer. She ends up being fired for something that is, at that point, kind of the third reason that's given to her after they told her that, oh, well, it's negative reviews, peer evaluations. At some point, though, Ms. Garrick's counsel brings up the idea of the why. And the why is the difference in the religious, right? I'm trying to imagine how a deposition would go in which the differences between her Christianity and the Moody's Christianity wouldn't arise. Well, I don't think there's any way in which they necessarily need to arise. And, you know, there's a host of ways that you can imagine this case going that don't implicate any religious questions. First, just to say, and we don't think this is the case, but say that at summary judgment, Garrick fails to make out her prima facie case. Then there's no issue. She loses the case, and there's no problem. But that's once you get to summary judgment. I have the same question about discovery. How do you conduct discovery in this case without encroaching on church doctrines or religious beliefs? Well, that is, discovery is the bailiwick of the district court. And Judge Lee was very considerate about that. So tell us, if you would. I understand it's within the district court's control, but tell us how is it that discovery could be conducted really not stepping on religious governance issues? Well, so Garrick has to accept the answers to religious questions, and she's never challenged them, right? So she's never said, actually, my view of whether women should be at the head of the ministry is correct or it's the correct reading of the Bible. Moody can, it raises a defense, which it has, that it has this specific view. And Garrick has to accept that, and the court has to accept that. But what Garrick can ask in discovery is, yes, but is this really the reason that I was mistreated? So say there's a deposition with Strant, the person who gave her a rave review and then two months later gave her a negative review. Once Strant is sworn in for a deposition, he might say, look, actually, yes, we thought that you were annoying. We were sick of you complaining about the discrimination you were facing, and we just wanted to find a way to get rid of you. That you can do that. There's no way that that raises a religious question. Again, Moody's free to raise its religious defenses. There's the religious defense under Title VII, potentially. There's a question of pretext. And the only question that Judge Lee said would go forward is not whether this is accurate, not whether this is correct. It's whether they believe it. And that's just a normal run-of-the-mill pretext question that's going to come up in all sorts of Title VII cases. I'm thinking of the deposition of Ms. Garrick. The questions would be, you said this on your EEOC claim. You said this when you signed the contract, but you believe something differently that came out in these various instances. It's the elephant in the room in any discovery as to this difference that they have, because isn't that what the motivation question is? And that would be asked of both her as well as asked of Moody's witnesses? I don't think so, Your Honor, because I think that Ms. Garrick could show that the motivation was sex discrimination. Again, at this point, all she's had to do is allege enough for there to be that sort of claim. And I do want to actually correct something that opposing counsel said. He said that you don't have to look at conflicting statements in a light favorable to Ms. Garrick if they're inconsistent. That is precisely wrong, and I'll point the court to Federal Rule of Civil Procedure 8. In 8d3, it says, consistency, quote, a party may state as many separate claims or defenses regardless of consistency. And then what it says in 8d2 is if one of those is good enough to go forward, then the claim can go forward. And that's absolutely the case here. But once again— Back on the discovery, the defense would be – Ms. Garrick would assert that the defense is just pretext, and she'd want to inquire into the sincerity of whether or not this was the real reason. How do you draw the line if she's trying to challenge and test their sincerity of firing her for religious reasons? Well, I mean, I think there's no question that sincerity is a fair game question. Yes. Right? And so this is, once again, heartland district court issue. The district court moderates discovery, and if there are questions that cross any sort of line, the district court can deal with that. Judge Lee made clear that he would not entertain religious questions, and there's no reason to believe that district courts are incapable of doing this. This is what they do. And actually, they're the ones who are on the ground with the case to say that any time that there's a potential issue, a discovery issue, you get an immediate right to appeal under Cohen. Think about what that would mean not only for this court's docket, for the district court's docket, but for litigants altogether. So under Moody's argument, there is an immediate right to appeal immediately for any, at least, denial of dispositive motion. So that's at least three rights to appeal during one case. But there's also the discovery issue, which they, I think, wisely move away from in their merits brief. But if you look at their jurisdictional brief, which is docket five, they do actually raise the discovery issue. And docket 11, they tried to supplement that by saying, lookit, here's discovery problems that are going to come up. This court will end up not only having to, again, sift through all of these complaints, but also will have to moderate and referee discovery disputes. That is certainly not what Cohen was for, right? Cohen is for clean questions separate from the merits that are pure questions of law. Because all of the stuff that we're talking about, this is district court litigation. And once again, the Supreme Court has said this court has recognized, and I'll point you to footnote five on page 22 of our brief, courts just widely have recognized 1292B, writ of mandamus. These are efficient, practical safety valves when something really goes wrong. Or in 1292B, when there's a particularly interesting question of law, then sure, we can get immediate appeal, but it doesn't open the floodgates. What are your thoughts on the argument that 1292B shouldn't just be in the district court's discretion as to whether those very important or very interesting issues of law come up to us? Well, I mean, I think that's a question for Congress. Congress said 1292B is a discretionary question when there's important questions of law. And Judge Lee didn't just, you know, wave that away. Judge Lee said there is no difference in opinion on law here, because the argument that Moody made at that time, that also, once again, I'll point to docket five, their jurisdictional statement at page two, that the argument that they made at that time is that pretext, any question of pretext in a non-ministerial context, is itself a First Amendment violation. Right? And so that's what they said in their jurisdictional statement here. It's what they said to Judge Lee. And what Judge Lee said was, you have presented me absolutely no case law that says that. So there's no reasonable difference of opinion here. 1292B did what it was supposed to do. But again, if they have an issue with 1292B, that's one to take up with Congress. Also, just kind of on that note, back to the kind of setting aside Herx, setting aside that McCarthy absolutely does not control here, but Herx is square and this court would have to try to overturn binding precedent to find jurisdiction, what Congress has said and what the Supreme Court has said, if there's an issue where you want to create a new category of appeals, go to the rulemaking process. That's what that's for. Congress did that because Cohen was such a nightmare, because courts were finding what they thought was important. That goes to your question about 1292B. Right? In the Tenth Circuit, mining might be really important. Or in the Second Circuit, security is really important. And Congress said, no, let's do this through the rulemaking process. I know that I don't have time to address all three Cohen factors. I'll point the court to our brief on that. So just in closing, to rule in Moody's favor, the panel would have to directly contradict binding precedent from this circuit. And even if that were allowed, Moody gives no reason to open the floodgates to unworkable categories of appeals when there are workable safety valves in place. This court should dismiss for lack of jurisdiction. Thank you, Mr. Girard. We'll now move to Ms. Yeomans. Good morning, Your Honors. Georgina Yeomans for the Equal Employment Opportunity Commission. We agree with Ms. Garrick that this court does not have jurisdiction over this appeal. It is nearly on all fours with Herx, except that Herx was actually at a more further along procedural posture where the question was about to go to the jury, making this case even less appropriate for interlocutory review. To the extent that there's a conflict between McCarthy and Herx, I think Mr. Girard did a good job explaining how Herx sort of explained McCarthy and the context that gave rise to collateral order review in that context. But to the extent that there's a conflict, Herx is, as I just said, much more aligned with this case. Herx was a Title VII sex discrimination case in which the religious institution defendant raised a religious reason for its actions. Judge Hamilton, you asked a question about whether there are factual disputes that might preclude jurisdiction in the way that a factual dispute in a qualified immunity interlocutory appeal would. And it's our position that there are factual disputes that preclude jurisdiction. And we don't think the analogy to qualified immunity is correct, but even if it were, it would fall into the Johnson v. Jones heartland where the Supreme Court has said even in that context, there is no appellate jurisdiction. And I'll just explain what we think the factual disputes are. In our view, this case has sort of two paths in front of it. One is a finding that Ms. Garrick was terminated because of her religious disagreement with Moody. And the other is a finding that Ms. Garrick was terminated because of her gender and because of her resistance of mistreatment based on her gender in the workplace. We don't actually yet know which of Ms. Garrick's allegations that have nothing to do with the doctrinal statement Moody actually contests. And there are a number of factual allegations that really do have nothing to do with a disagreement over doctrine, including the allegation that Ms. Garrick was given a heavier workload than her male colleagues, the allegation that she wasn't given time off to pursue her terminal degree, the allegation that she was subject to peer reviews and her male colleagues were not, and the allegations that she was ridiculed in the workplace by male colleagues and that her supervisors did not respond to it in an appropriate manner, and the allegation that she co-presented with a male colleague and only she was reprimanded for that presentation. And again, Ms. Yeomans, isn't this a different case if we didn't have the First Amendment complaint with Judge Lee's decision? Because even what you've articulated there, closer to the Second Amendment complaint, but even in the Second Amendment complaint, I'm sure you're talking about her beliefs, you're talking about the different versions of Christianity. I'm not sure how one can segregate the claims that you're talking about from the religious disagreement that existed between the employee and the employer. I think Judge Lee did a good job of segregating the two different realms of impermissible allegations that would potentially implicate religious autonomy if pursued and those that would not. The ones I've just described, I think, do not at this point. I don't understand Moody to be attributing those allegations to its doctrinal statement. And Judge Lee made clear that things that could fall within the religious autonomy realm, like being forbidden from speaking at chapel, for instance, or not being allowed to have her ministerial title on her resume, those things are off limits because of their possibility to implicate religious autonomy. So the case can go forward and be decided on the basis of those facts that really don't implicate the doctrinal statement, at least at this point. How would those questions happen in depositions, like we've talked about? How would that be avoided during this course of discovery? I mean, these are simple factual disputes, right? The questions would be, did this actually happen in the workplace? Why are male colleagues allowed to take time off to finish their degrees? Why was Ms. Garrick not given that opportunity? Why was Ms. Garrick given a heavier workload? Was she given a heavier workload? Wouldn't the why question have to be asked, though? I mean, especially with regard to the discrepancy between her signing the contract and then the reason for her leaving. The why question, I think it depends on the context. So the why's that I just articulated I don't think are problematic, right, because it doesn't implicate the religious doctrine in any way. The why question that Your Honor is referring to is— The difference between the Christianity that she embraced and the one that Moody was teaching. Right. I think the district court sort of took as a given that there is that conflict, right? And I think a jury could acknowledge that conflict and take that as sort of a given and still find that the evidence of sort of, I'll say, secular gender-based mistreatment outweighs that conflict. And find that it was pretextual using the neutral principles that this court has articulated in the ministerial exception context. Thank you, Ms. Yeomans. Thank you, Your Honor. Mr. Blomberg, we'll recognize you for rebuttal. We'll give you two minutes. Thank you. Just a couple quick points. First, we don't dispute the facts. We think as a legal matter, the EEOC charge takes the pretext question away as a legal matter. And we think that this court's decision in Chavez 937 F3rd 998 that says you can't have incongruent or inconsistent allegations in an EEOC charge and then say something different in your complaint. Just period. That's off the table. But if this court were to disagree, we think as a legal matter, it still is a problem, a church autonomy problem, to allow the kind of pretext inquiry that would be required. The district court said the only thing that's coming next, the only thing that's coming next is this inquiry into the religious reasons for Moody's beliefs. And you asked both of my friends on the other side, what would that question look like? How would those discussions look like? You didn't get an answer. The reason why is that this court's decision in NLRB says that kind of inquiry where there's a sincere religious belief, an undisputed violation of it, will chill religious exercise undisputedly. The Hosanna-Tabor concurrence by Justice Alito and Justice Kagan said the mere adjudication of these kind of pretextual issues will cause religious autonomy problems. The Dimkovich district court decision that said I'll let the disability claim go up, but I can't allow the marriage claim to go up because of the religious beliefs here that are undisputed. That district court opinion does a very good job of walking through exactly the kind of situation that will arise in discovery, and it's going to create the kind of problems here. Moody's going to assert a religious reason, and they'll be testing the plausibility of Moody's religious reason. It's exactly what Keira A. Kramer says is off limits in this kind of context. Your Honor, there were several—I want to address each of the specific things that were brought up—the peer review, joint presentation, reduced teaching load, the five new courses, the negative performance review, the terminal degree, ridicule. All of those are all in the First Amendment complaint, every single one of them. They're also all within this dispute. If you look at Paragraph 18, Paragraph 79, Paragraph 69, Paragraph 71, and Paragraph 72, you will see every single one of those allegations were situated within the dispute that started in 2016 regarding Moody's religious beliefs. The McCarthy case controls, it gives this court jurisdiction. So McCarthy said a lot of things, but it actually dismissed an appeal, right, where the Holy See says we're not sure at all that there's going to be entanglement here. And as long as there was a possibility of not being entangled, the appeal was premature, right? That's right, because the religious organization whose rights would have been impinged said we don't see a problem here. But they didn't do that on the first issue, which is what this court granted jurisdiction over. And the court did say—and this is one of the reasons why this case is a stronger case for interlocutory appeal than McCarthy—the court said there's likely a government intrusion that will cause irreparable harm. That's the term that this court used. It says it's likely. The same paragraph where it's talking about irreparable harm. And Judge Posner there expressly said we don't know that this will actually factor into liability at all. We don't know that this will ever actually be a problem. You do know there will be a problem here because the only inquiry left for this case is into Moody's religious reasons. That's what the judge ruled below at Essay 11 and Essay 23. That's all that's left for this court to do. So it goes precisely into the kinds of problems that McCarthy recognized, except more so. And McCarthy didn't just say it's just religious questions. When it made that point that said courts can't get involved in religious disputes, it cited to Hosanna Tabor, it cited to Milivojevic, and it cited to Kedroff. This case is that case, and we ask the court would take jurisdiction and reverse the district court's decision. Thank you. Thank you, Mr. Blomberg and your team. Thank you, Mr. Girard. Thank you, Ms. Yeomans and your team. The case will be taken under advisement.